Joseph J. Vitale
Tzvi N. Mackson
COHEN, WEISS AND SIMON LLP
330 West 42nd Street, 25th Floor
New York, New York 10036-6976
Telephone: (212) 563-4100
Facsimile: (212) 695-5436

CV 13  7191

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
JOSEPH A. FERRARA, SR., FRANK H. FINKEL, :
MARC HERBST, DENISE RICHARDSON, :
THOMAS F. CORBETT, THOMAS GESUALDI, :
LOUIS BISIGNANO, ANTHONY D'AQUILA, :        Civil Action No.:
MICHAEL O'TOOLE, and BENEDETTO :
UMBRA, as Trustees and Fiduciaries of the Local :
282 Welfare Trust Fund, the Local 282 Pension :
Trust Fund, the Local 282 Annuity Trust Fund, the :
Local 282 Vacation and Sick Leave Trust Fund, and :
the Local 282 Job Training Trust Fund, :
                                                :
                            Plaintiffs,         :
                                                :
        - against -                             :
                                                :
P J F TRUCKING LLC,                             :
                                                :
                            Defendant.          :
-------------------------------------------------------------------- x

## COMPLAINT

Plaintiffs Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson, Thomas F. Corbett, Thomas Gesualdi, Louis Bisignano, Anthony D'Aquila, Michael O'Toole, and Benedetto Umbra, as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Vacation and Sick Leave Trust Fund, and the Local 282 Job Training Trust Fund (collectively, the "Funds"), for their complaint allege as follows:

00302204.1

## INTRODUCTION

This is an action by the Trustees and fiduciaries of employee benefit plans for injunctive and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132(a)(3) and 1145. This action arises from the failure of defendant P J F Trucking LLC ("P J F") to permit a complete audit of its books and records for the period commencing May 26, 2009, as required by ERISA, the Trust Agreement governing the Funds, and the applicable collective bargaining agreement and to remit any contributions and attendant damages identified as due by said audit, as well as to collect delinquent contributions and various other sums owed by P J F to the plans.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and Sections 502(e)(1) and 502(f) of ERISA, 29 U.S.C. §§1132(e)(1) and 1132(f).

2. Venue lies in this district under Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), as the Funds are administered in this district.

## THE PARTIES

3. Plaintiffs are Trustees and fiduciaries of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). Plaintiffs have discretion and control over the assets and administration of the Funds.

4. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and §1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042. The Funds are jointly administered by a Board of Trustees, comprised of labor and management

representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. §186(c)(5).

5. Pursuant to the terms of various collective bargaining agreements between Building Material Teamsters Local 282, International Brotherhood of Teamsters ("Local 282" or the "Union") and various employers (the "Employers"), the Employers, including P J F, are required to contribute to the Funds on behalf of employees covered by the collective bargaining agreements.

6. The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from the Employers and providing benefits to eligible participants.

7. The collective bargaining agreements and the Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). The Funds are third-party beneficiaries of the collective bargaining agreements.

8. P J F is, and at all times relevant to this action has been, a New Jersey corporation, with its address at 820 Essex Avenue, Linden, NJ 07036-2305. P J F is, and at all times relevant to this action has been, engaged in the trucking business in the New York metropolitan area. P J F is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Article I, Section 1 of the Trust Agreement.

## **FACTUAL BASIS FOR CLAIMS**

The Collective Bargaining Agreements, the Trust Agreement, and
the Obligations to Contribute to the Funds and Submit to Audit

9. P J F has been and is bound by the Metropolitan Truckers Association, Inc. & Independents Agreement with Local 282 for the period of July 1, 2009 through June 30, 2012 (the "2009 CBA").

10. The 2009 CBA requires P J F to make contributions to the Funds on behalf of its employees who are covered by its terms, at specified rates for each hour of covered employment. Along with the contributions, the 2009 CBA also requires P J F to submit remittance reports to the Funds. The remittance reports provide P J F's statement of the employees who performed work covered by the 2009 CBA and the number of hours each such employee worked in covered employment.

11. The 2009 CBA provides that P J F is bound to the Trust Agreement, which specifically provides:

> In the event the Employer has neither signed nor authorized an Industry association to sign a current collective bargaining agreement on its behalf, the Employer shall remain obligated to make timely contributions to each Fund as set forth in the most recent collective bargaining agreement to which the Employer is a party unless the Trustees have received notice from the Employer, at least 60 days prior to the expiration of the most recent collective bargaining agreement to which the Employer is a party, that the Employer does not intend to sign a new collective bargaining agreement and will not contribute to the Funds for work performed after the expiration of the most recent collective bargaining agreement to which it is a party. If the Employer makes contributions at the rates stated in the current collective bargaining agreement applicable to its Industry, the Employer shall be deemed a party to that current collective bargaining agreement, and shall be obligated to make timely contributions to each Fund as set forth in that collective bargaining agreement.

12. P J F has evinced an intent to be bound to the successor collective bargaining agreement (the "2012 CBA" and, together with the 2009 CBA, the "CBAs"), which is in effect at present and is relevant to this action. Specifically, since June 30, 2012 P J F has remitted contributions to the Funds at the rates prescribed by the 2012 CBA, which differ from the rates prescribed in the 2009 CBA. Also, since June 30, 2012, P J F has submitted to the Funds, along with its contributions, signed remittance reports that state: "BY SIGNING THIS REPORT YOU AGREE TO ACCEPT THE TERMS OF THE LOCAL 282 INDUSTRY COLLECTIVE BARGAINING AGREEMENT COVERING THE WORK PERFORMED BY YOUR EMPLOYEES."

13. At all times relevant to this action, the CBAs have required Employers to make contributions to the Funds on behalf of all covered employees, at specified rates for each hour of covered employment, subject to certain limitations and premium payments which are set forth therein.

14. Pursuant to the CBAs, contributions are due sixty (60) days after the close of the calendar month. However, pursuant to the CBA, any employer that does not post a surety bond is required to make payments to the five trust funds on a weekly basis.

15. P J F has not posted a surety bond. P J F is therefore obligated to pay contributions on weekly basis.

16. Along with the contributions, P J F is also required to submit remittance reports to the Funds. The remittance reports provide P J F's statement of the employees who performed work covered by the CBAs and the number of hours each such employee worked in covered employment.

17. The CBAs bind Employers to the Trust Agreement.

18. The Trust Agreement provides that if an Employer fails to remit contributions by the date due, the Employer is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs.

The Trust Agreement and the Obligation To Permit Audits

19. The Trust Agreement requires an Employer to submit remittance reports and contributions to the Funds. These reports constitute the Employer's weekly statement of the number of hours worked by its employees who are covered by the CBA as well as the Employer's stated contribution due to each Fund for the period covered by each remittance report.

20. The Trust Agreement requires an Employer to submit to periodic audits of its books and records. Specifically, Article IX, Section 1(d) of the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with" the Employer's contributions to the Funds.

21. Article IX, Section 1(d) of the Trust Agreement defines "pertinent books and records" to include but not be limited to:

> (a) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;
>
> (b) Payroll tax records submitted to federal and state governments, including Forms 941 and W-2;
>
> (c) Complete business income tax returns;
>
> (d) Cash disbursements records;
>
> (e) General ledgers;

   (f)  Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

   (g)  Any other records specifically requested by the Funds' auditors, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

22. Article IX, Section 1(d) of the Trust Agreement additionally provides that pertinent books and records of an Employer include:

> the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or businesses "under common control," as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes, which includes the Employer.

23. The Trust Agreement requires an Employer to submit to audit in order to verify that (i) all contributions required under the applicable collective bargaining agreement(s) have been remitted to the Funds, (ii) such contributions have been made solely on behalf of individuals eligible to participate in the Funds and (iii) covered employees are receiving the required benefits and/or credits.

24. Article IX, Section 1(f) of the Trust Agreement provides that the Trustees may "apply for and be entitled to a mandatory injunction directing the Employer to produce its said books and records for audit."

25. Article IX, Section 3 of the Trust Agreement provides that an Employer determined to owe contributions by an audit is required to pay, in addition to the contributions due, interest, liquidated damages, attorney's fees, audit fees, filing fees, and costs.

26. Pursuant to Article IX, Section 3 of the Trust Agreement, as amended, interest is calculated at the rate of 1-1/2 percent per month. For work performed on or before

May 1, 2013, interest is calculated beginning from the first day of the month when the contributions were due to the date the contributions were received by the Funds. For work performed after May 1, 2013, interest is calculated beginning from the day the contributions were due to the date the contributions were received by the Funds.

Authorization for Estimated Audits to Calculate Contributions and Other Amounts Owing

27. Article IX, Section 1(e) of the Trust Agreement provides that an Employer who "fails to submit the required remittance reports and/or pertinent books and records for audit within twenty (20) days of written demand must pay an increased monthly contribution." Article IX, Section 1(e) of the Trust Agreement further provides that the increased monthly contribution for which the Employer is liable is calculated by multiplying the applicable contribution rates by the total number of covered hours as determined by the methods described below in paragraph 28.

28. Article IX, Section 1(e) of the Trust Agreement provides that, for the purpose of calculating increased monthly contributions for which an Employer is liable, the total number of covered hours is determined as follows: (1) "by adding 10 percent to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) months or fifty two (52) weeks (or any combination thereof) for which reports reflecting at least one hour of covered work performed were submitted by the Employer (hereinafter referred to as the base month)"; (2) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours is increased by 10% and then added to the number, if any, of reported hours in the base month (which is also increased by 10%) to arrive at the total number of covered hours in the base month; and (3) in the event that no base month can be identified because there are no previous remittance reports or audit reports, the Employer is deemed to have the number of employees that the Union reports in writing that the Employer is

employing, and each employee is deemed to have worked 40 hours per week for the entire unreported period.

29. Article IX, Section 1(f) of the Trust Agreement provides that where an Employer:

> submits the required remittance reports, but thereafter such Employer fails to submit the pertinent books and records for audit within 20 days of written demand, such failure shall be a material breach of the Trust Agreement. In such event the Trustees and/or their agents may compute the additional contributions due for any month by taking 50 percent of the number of hours reported for that month and then multiplying said number of hours by the current contribution rate.

The Failure to Allow Audit #13-0759

30. By letters dated October 9, 2012 and November 7, 2012, the Funds' auditors requested that that P J F submit to an audit for the period beginning June 28, 2010 (Audit #13-0759).

31. In telephone conversations with the Funds' counsel on January 11, 2013, February 19, 2013, and October 18, 2013, P J F's President, Paula Reynoso, agreed to submit P J F's books and records to audit for the period beginning on June 29, 2010.

32. P J F has failed or refused to submit to an audit of its books and records, pay amounts which would be due as a result of such audit, and/or pay amounts due pursuant to Article IX, Sections 1(d), 1(e), 1(f) and 3 of the Trust Agreement.

Amounts Due on Contributions Paid Late

33. P J F paid contributions late for the weeks ending on July 22, 2011, July 29, 2011, August 19, 2011, August 26, 2011, September 23, 2011, September 28, 2011, November 20, 2011, January 11, 2013, January 18, 2013, January 25, 2013, February 1, 2013, February 8, 2013, February 15, 2013, February 22, 2013, March 1, 2013, and March 8, 2013.

34. Article IX, Section 3 of the Trust Agreement provides that the failure to promptly remit contributions due constitutes a violation of the CBA and Trust Agreement. Article IX, Section 3 further provides that in such instance, the Employer is obligated to remit interest, liquidated damages, attorney's fees and costs.

35. By letters dated August 26, 2011, September 28, 2011, January 25, 2012, February 7, 2012, March 29, 2012, October 5, 2012, and October 12, 2012, the Funds' counsel requested payment from P J F for interest, liquidated damages, and attorney's fees and costs due on late-paid contributions.

36. To date, P J F has failed to pay the interest, liquidated damages, and attorney's fees and costs due on the late contributions.

Remittance Reports

37. P J F has failed to submit remittance reports reflecting the amount of contributions due for the weeks ending on September 20, 2011, October 21, 2011, January 11, 2013, January 18, 2013, August 2, 2013, and August 30, 2013.

38. By letters dated January 5, 2012, February 7, 2012, March 29, 2012, October 5, 2012, and October 24, 2012, the Funds' counsel requested that P J F submit the remittance reports then due.

39. To date, P J F has failed to submit all the remittance reports due.

Unpaid Contributions for Unreported Hours Worked

40. An employee of P J F (the "Employee")[1] worked various date in 2011.

---

[1] Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), P.L. 104-91, which became effective April 14, 2003, health plans (which include the Local 282 Welfare Trust Fund) are prohibited from disclosing "protected health information" regarding a health fund participant. Accordingly, the name of the Employee, which may constitute "protected health information," has been redacted. The Funds' counsel notified P J F of the Employee's identity in the letter mentioned in paragraph 43 below.

- 10 -

41. P J F failed to properly report all hours worked by the Employee during the weeks that ended on the following dates in 2011: June 3, July 9, July 29, August 5, August 13, August 19, September 2, September 9, September 16, September 23, September 30, October 7, October 14, October 21, November 18, December 2, December 9, December 16, and December 23 (the "Underreported Periods").

42. By comparison between the Employee's pay stubs and the hours reported by P J F on remittance reports submitted by P J F, the Funds have determined that P J F owes $10,267.96 in unpaid contributions for unreported hours worked by the Employee during the Underreported Periods.

43. By letter dated October 24, 2012, the Funds' counsel requested payment of the delinquent amounts attributable to the Underreported Periods.

44. To date, P J F has failed to remit the delinquent amounts attributable to the Underreported Periods.

Failure to Pay Audit #11-0425

45. Following an examination of P J F's books and records for the period from May 26, 2009 through June 27, 2010, the Trustees' auditor issued an audit report, #11-0425, reflecting that P J F owes $11,233.56 in contributions.

46. By letters dated October 5, 2012 and October 24, 2012, the Funds requested payment of the audited deficiency reflected in audit #11-0425.

47. To date, P J F has failed to remit payment of the audited deficiency reflected in audit #11-0425.

Other Amounts

48. On information and belief, additional amounts will continue to become due and owing by P J F to the Funds during the pendency of this action.

## CAUSE OF ACTION

## COUNT I - ERISA

49. Plaintiffs repeat and reallege the allegations of paragraphs 1 to 48 as if fully set forth herein.

50. Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

51. Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

52. Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan –

    (a)    the unpaid contributions,

    (b)    interest on the unpaid contributions,

    (c)    an amount equal to the greater of –

        (i)    interest on the unpaid contributions, or

        (ii)    liquidated damages. . . in an amount not in excess of 20 per cent of the [unpaid contributions],

    (d)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

      (e)    such other legal or equitable relief as the court deems appropriate . . . ."

53. Section 502(g)(1) of ERISA, 29 U.S.C. §1132 (g)(1), provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action...."

54. P J F, by virtue of its failure to submit all of its books and records to audit, is subject to an injunction ordering it to submit immediately to such audit and is required to pay the contributions due according to the audit, interest on the delinquent contributions, liquidated damages, audit fees, attorney's fees, and costs.

55. P J F, by virtue of its failure to submit all of its books and records to audit within twenty (20) days of written demand, is liable for <u>increased</u> monthly contributions to the Funds (calculated in accordance with Article IX, Section 1(e) of the Trust Agreement) for each month during which it failed and fails to submit all of its books to audit.

56. P J F, by virtue of its failure to submit remittance reports for periods in which its covered drivers performed covered work, is liable for <u>increased</u> monthly contributions to the Funds (calculated in accordance with Article IX, Section 1(e) of the Trust Agreement) for each month during which it failed and fails to submit the required remittance reports.

57. P J F, by virtue of its failure to submit all of its books and records to audit within twenty (20) days of written demand, is liable for an <u>additional</u> monthly contribution to the Funds (calculated in accordance with Article IX, Section 1(f) of the Trust Agreement) for each relevant month in which it submitted remittance reports but failed to submit all of its books and records to audit.

58. P J F is liable to the Funds for interest due on unpaid required contributions, liquidated damages, audit fees, attorneys' fees, and costs, in accordance with Article IX, Section 3 of the Trust Agreement and Section 502(g) of ERISA, 29 U.S.C. §1132(g).

59. The Funds are entitled to all remedies available under Section 502(g) of ERISA, 29 U.S.C. §1132(g), for P J F's failure to submit all its books and records to audit, to pay amounts determined due by such audits, and to make contributions in accordance with the terms of the Funds' plan documents.

## COUNT II – LMRA

60. Plaintiffs repeat and reallege the allegations of paragraphs 1 to 59 as if fully set forth herein.

61. Section 301 of the LMRA, 29 U.S.C. §185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

62. By failing to pay the contributions and other amounts owing, P J F has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

63. The Funds are thus entitled under LMRA Section 301(a) to the unpaid contributions, interest, liquidated damages, attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs request that the Court enter a judgment and injunction:

1. Ordering P J F to submit to an audit of all of its books and records for the period from June 28, 2010 through the date of the audit;

2. Ordering P J F to pay (i) any delinquencies identified by the audit, (ii) interest on the contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment, (iii) an amount equal to the greater (a) of interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid

contributions, and (iv) the cost of the audit;

      3.      Ordering P J F to pay, with respect to the audit, (i) increased contributions in an amount computed under Article IX, Sections 1(e) or 1(f) of the Trust Agreement for the period from June 28, 2010 through the date of the audit, (ii) interest on the contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment, (iii) an amount equal to the greater of (a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, and (iv) the costs incurred in estimating the amounts due;

      4.      Ordering P J F to submit remittance reports for any weeks for which such reports have not been submitted as of the date judgment is entered;

      5.      Ordering P J F to pay to the Funds (i) all delinquent contributions owed; (ii) interest on all delinquent and late-paid contributions at the rate of 18% per year from the first day of the month when the payment was due through the date of payment; (iii) an amount of liquidated damages equal to the greater of (a) interest on the delinquent and late-paid contributions or (b) 20 percent of the delinquent contributions; and (iv) the Funds' attorneys' fees and costs.

      6.      Awarding plaintiffs reasonable attorney's fees and costs of this action pursuant to Sections 502(g)(1) and (g)(2) of ERISA, 29 U.S.C. §§1132(g)(1) and (g)(2), and Article IX, Section 3 of the Trust Agreement; and

      7.      Ordering such other legal and equitable relief as the Court deems proper.

Dated: December 16, 2013

    New York, New York

                                           Respectfully submitted,

                                           _____
                                           Joseph J. Vitale
                                           Tzvi N. Mackson
                                           COHEN, WEISS and SIMON LLP
                                           330 West 42nd Street
                                           New York, New York 10036
                                           (212) 563-4100

                                           Attorneys for Plaintiffs